REVISED - JANUARY 30, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10389
_____


HENRY LEE LUCAS,

                                      Petitioner-Appellant,

                    versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

                                      Respondent-Appellee.
_____

Appeal from the United States District Court for the
Northern District of Texas, San Angelo
_____

January 9, 1998

Before KING, JOLLY, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Henry Lee Lucas was sentenced to death after being convicted of capital murder in Texas state court. Following affirmance of the conviction and sentence on direct appeal, Lucas filed three applications for habeas corpus relief in state court. After the denial of the final state application, Lucas filed his first application for habeas corpus relief in federal district court, setting out seventeen alleged errors that he contended warranted relief. The district court denied the application and denied

Lucas's request for a certificate of probable cause. Lucas then filed an application for a certificate of probable cause with this court, advancing all seventeen points of error. It is this application that is before us today.

I

Lucas filed his application for a certificate of probable cause in May 1996. One month prior to his filing, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). In the light of the application of the Supreme Court's recent ruling in Lindh v. Murphy, 117 S.Ct. 2059, 2063-68 (1997), and this court's previous determination that Texas does not meet the requirements to "opt in" under the AEDPA, the amendments to the federal habeas statutes do not govern this appeal. 28 U.S.C. § 2261(b); Carter v. Johnson, 110 F.3d 1098, 1104 (5th Cir. 1997) (noting Texas fails to qualify to opt in under AEDPA); Mata v. Johnson, 99 F.3d 1261, 1267 (5th Cir. 1996), vac'd in part on other grounds, 105 F.3d 209 (5th Cir. 1997). Under pre-AEDPA law, a habeas petitioner must obtain a certificate of probable cause ("CPC") prior to pursuing an appeal. 28 U.S.C. § 2253. Generally, the standard used to determine whether a CPC should issue, or, under the AEDPA, whether a certificate of appealability ("COA") should issue, is the same. Drinkard v. Johnson, 97 F.3d 751, 756 (5th Cir. 1996), cert. denied, 117 S.Ct. 1114 (1997) (noting the

2

standards for issuance of CPC and COA are identical). Specifically, in order to obtain a CPC, a petitioner must make "a substantial showing of the denial of a federal right." Id.

We therefore analyze Lucas's application for a certificate of probable cause under the pre-AEDPA relevant statutory authority and case law and examine his allegations to determine whether he has made the requisite "substantial showing of the denial of a federal right" with respect to any of the seventeen alleged errors. Under the pre-AEDPA standard, we require the habeas petitioner to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further." Drinkard, 97 F.3d at 755 (citing Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). We hold that Lucas has met his burden in this respect and we grant his request for a CPC.

We turn now to the merits of the arguments advanced by Lucas in his application.

II

A

Lucas raises the following seventeen issues:

1. His execution would violate the Due Process Clause of the Fourteenth Amendment because he is actually innocent of the crime of capital murder in this case.

2. He has been deprived of due process of law as guaranteed by the Fifth, Sixth, and Eighth Amendments by

the actions of the State in seeking his execution when the State has announced, via the Lucas Report, and public statements by the Attorney General, that the evidence acquired and reviewed by the State's chief legal officer substantiates the fact that he is innocent of the charge.

3.    His conviction violates the Due Process Clause of the Fourteenth Amendment because the State failed to prove the corpus delicti of capital murder (murder in the course of committing or attempting to commit aggravated sexual assault).

4.    His execution in a case in which the victim was never identified would be fundamentally unfair and would be cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

5.    His counsel on direct appeal failed to provide effective assistance, because she failed to challenge the State's failure to identify the victim.

6.    His attorneys failed to raise several meritorious points, depriving him of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments.

7.    The prosecutor improperly commented on his silence at trial and thereby violated his rights under the Fifth and Fourteenth Amendments.

8.    The introduction of prior convictions to impeach his chief witness violated the Due Process Clause of the Fourteenth Amendment and rendered his trial fundamentally unfair.

9.    The admission of his videotaped statement made in February 1984 undermined the fundamental fairness of his trial, because the statement was taken in violation of his rights to due process and assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments.

10. He was denied the presumption of innocence guaranteed by the Fourteenth Amendment by the admission of his August 1983 videotaped confession, because he is handcuffed in the video.

11. The admission of his June 1983 written statement was erroneous because it was obtained in violation of his right to counsel guaranteed by the Fifth and Sixth Amendments.

12. The admission of his July 28, 1983 confession was erroneous because it was obtained in violation of his right to counsel guaranteed by the Fifth and Sixth Amendments.

13. The admission of his July 31, 1983 audiotaped confession was erroneous because it was obtained in violation of his right to counsel guaranteed by the Fifth and Sixth Amendments.

14. His trial was rendered fundamentally unfair by the admission of evidence of extraneous offenses contained in his July 31, 1983 audiotaped confession.

15. His due process rights under the Fourteenth Amendment were violated by the State's withholding of material exculpatory evidence concerning another suspect in this case.

16. His right to a fair trial was violated by the trial court's failure to provide instructions at the penalty stage that would have allowed the jury to consider the mitigating aspects of evidence of mental illness and an abusive childhood.

17. His original arrest was illegal for lack of probable cause and his subsequent confessions in this matter are tainted by that unlawful arrest in violation of the Fourth Amendment.

We will now address each of Lucas's contentions to determine whether the district court erred when it refused to award Lucas habeas relief.

III

A

Lucas contends that evidence, newly discovered and accumulated after his conviction, conclusively establishes that he is innocent of the crime for which he was sentenced to death. At the outset, we should observe that much of the evidence alleged by Lucas to be newly discovered is neither new nor newly discovered, but in its essence and character, was presented, or available to present, to the trial jury.[1] See United States v. Freeman, 77 F.3d 812, 816-17 (5th Cir. 1996) (setting forth the "Berry" rule for other relief based on newly discovered evidence) (citing Berry v. Georgia, 10 Ga. 511 (1851)). Lucas's trial jury had ample opportunity to consider whether such evidence was convincing of actual innocence and obviously determined that it was not. In any event, it has long been a habeas rule that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Herrera v. Collins, 954 F.2d 1029, 1034 (5th Cir. 1992)(quoting Townsend v. Sain, 83 S.Ct. 745, 759 (1963)), aff'd, 113 S.Ct. 853 (1993). Contrary to what Lucas argues, the Supreme Court's Herrera opinion does not alter this entrenched habeas principle.

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in

---

[1]See infra note 3.

6

> the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.

Herrera, 113 S.Ct. at 860. Throughout the opinion, the Court returns to its original premise that "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 862. Justice Rehnquist further clarifies that the Court has "never held that [the fundamental miscarriage of justice exception] extends to freestanding claims of actual innocence." Id. at 863.

The language Lucas seizes upon appears at the end of the opinion where the Court writes:

> We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.

Id. at 869. The Court never held, however, that actual innocence would entitle a petitioner to habeas relief. It simply assumed such a premise arguendo. Id. at 874 ("Accordingly, the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence. That difficult question remains open.").

Still a further bar to construing Herrera as effecting such a substantial expansion of federal habeas law is the language ignored

7

by the petitioner that federal habeas relief would be warranted only **"if there were no state avenue open to process such a claim**." This conditional statement was made in the context of the Court's discussion of clemency and the availability of such procedures in Texas specifically, with the Court noting that "all 36 States that authorize capital punishment have constitutional or statutory provisions for clemency."  Id. at 866-69 (executive clemency is proper remedy to be sought by convicted person claiming actual innocence).  Thus, the relief requested of us in this Texas case, even if somehow cognizable, nevertheless is thwarted by the restrictive language of the Herrera Court.

In subsequent opinions, our court has discussed Herrera, although not in any great detail.  In Pemberton v. Collins, we noted the "properly limited role" that a federal habeas court fills when the constitutionality of a state court conviction is brought before it.  991 F.2d 1218, 1223 (5th Cir. 1993).  "A federal habeas court asks **only** whether a constitutional violation infected the trial."  Id. (emphasis added) (citing Herrera).

This court reemphasized this limited role in Bryant v. Scott, 28 F.3d 1411, 1420 n.14 (5th Cir. 1994).  The petitioner argued that the district court erred in refusing to grant relief on the basis of his actual innocence claim.  Bryant, 28 F.3d at 1420 n.14. In discussing his claim, the Bryant Court basically noted that the

Supreme Court had affirmed our opinion in <u>Herrera</u> holding that claims of actual innocence based on newly discovered evidence are not cognizable under federal habeas corpus, <u>id.</u> (quoting <u>Herrera</u>, 954 F.2d at 1034; <u>Herrera</u>, 113 S.Ct. at 860), and summarily held Bryant's actual innocence claim to be without merit.

We more fully discussed the <u>Herrera</u> issue in <u>Jacobs v. Scott</u>, 31 F.3d 1319, 1324-25 (5th Cir. 1994). A brief quote, however, will suffice to sum up the panel's holding:

> The [<u>Herrera</u>] Court did not reach the issue of whether a defendant on death row can be executed if he can show that he is "actually innocent." Thus, <u>Herrera</u> does not affect the precedential value of <u>Boyd</u>.[2] We need not engage in the Court's hypothetical analysis of whether the defendant has made a "truly persuasive demonstration of 'actual innocence.'"

<u>Jacobs</u>, 31 F.3d at 1324. <u>Herrera</u> does not overrule previous holdings (nor draw them into doubt) that a claim of actual innocence based on newly discovered evidence fails to state a claim in federal habeas corpus. Lucas's request for federal habeas relief on this basis is denied.[3] Lucas's road to relief on his

---

[2]<u>Boyd v. Puckett</u>, 905 F.2d 895, 896-97 (5th Cir.) (relying on <u>Townsend v. Sain</u>, 83 S.Ct. 745, 759 (1963), for the holding that habeas relief is unavailable where new evidence bears only upon the petitioner's guilt or innocence), <u>cert. denied</u>, 111 S.Ct. 526 (1990).

[3]We must note that on the basis of the allegedly newly discovered evidence set out in the record before us, Lucas has failed to demonstrate that he is actually innocent of the "Orange Socks" murder. The <u>Herrera</u> Court said that only a "truly persuasive demonstration of 'actual innocence' made after trial

would render the execution of a defendant unconstitutional" and that "the threshold showing for such an assumed right would necessarily be extraordinarily high." Herrera, 113 S.Ct. at 869. The Court premised its observation on the assumption that the claim of actual innocence was grounded on newly discovered evidence. Id. Requests for relief based on newly discovered evidence generally must demonstrate that:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) the defendant's failure to detect the evidence was not due to a lack of diligence; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence would probably produce acquittal at a new trial.

Freeman, 77 F.3d at 817 (citing United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991)) (discussing motion for new trial based on newly discovered evidence); see also Herrera, 113 S.Ct. at 860 (quoting Townsend v. Sain, 83 S.Ct. 745, 759 (1963)) (noting standard for federal habeas evidentiary hearing premised on newly discovered evidence). Lucas suggests the following "newly discovered evidence" suffices to demonstrate his innocence:

1) An audit conducted by John Reeves, the owner of the Florida company for which Lucas worked, which indicated that the work records showing that Lucas was at work at the time of the murder were correct;

2) Testimony by Lucas's neighbors that because Lucas was one of the few white residents in that area, they would have noticed his absence had he been out of town for an extended time to commit the murder and they had not noticed any such absence;

3) Expert testimony by Dr. Gudjonnson that Lucas fit the profile of a liar and explaining the impetus behind Lucas's confessions and why they were false;

4) The Lucas Report prepared by the Texas Attorney General's office that documented Lucas's whereabouts at the time of the murder and purportedly concluded that he was in Florida when the Texas murder took place;

5) The preferred treatment Lucas received while incarcerated and providing the authorities with information concerning different crimes; and

6) Polygraph results that Lucas was being truthful when he disavowed any involvement with the "Orange Socks" murder.

Although this "new" evidence provides support for Lucas's defense at trial, it is insufficient to demonstrate that he is actually innocent of the murder for which he was sentenced to die. Indeed, it is hardly correct to classify the evidence as "new" or

10

as "newly discovered." The evidence is more aptly described as simply corroborative of the alibi defense presented to the jury. Furthermore, it was available, if not accumulated in its present form, at the time of the state trial.

At trial, Lucas's alibi defense was supported by testimony that he was on a construction job in Florida at the time the "Orange Socks" murder occurred. The "newly discovered" evidence of the post-trial audit conducted by Lucas's employer does not purport to demonstrate the unequivocal correctness of the work records indicating his presence in Florida. The accuracy of these records was thoroughly litigated at trial. Furthermore, testimony adduced at trial indicated that a kickback system for falsifying attendance records was well established at Lucas's workplace. In addition, the State counters Lucas's neighbors' testimony that they would have noticed an extended absence with the assertion that Lucas did not move to the neighborhood in question until after the time of the murder. As such, their testimony is irrelevant.

The testimony proffered by defense expert Dr. Gudjonnson appears for the main part only to corroborate evidence presented at trial. Because Lucas's defense was an alibi, his confessions were naturally placed under strict scrutiny. Indeed, Lucas's attorneys argued in closing that the jury should disregard Lucas's statements because he was attempting to commit "legal suicide."

The Lucas Report does not contain any significant new evidence that in substance was not presented to the jury. It merely helps to document Lucas's whereabouts and corroborates the defense's alibi theory, which was presented at trial, that Lucas was in Jacksonville, Florida, at the time of the murder. One new piece of evidence that the Report does set out is Lucas's description of a car fire that took place in Florida on the day of the murder--the import being that Lucas had to be present at the fire in order to so accurately describe it. At the federal evidentiary hearing, however, testimony indicated that Lucas could have learned of the fire from two different acquaintances.

Further, although the treatment that Lucas received while incarcerated is certainly suggestive of favors bartered for information and confessions, it is insufficient to raise a serious question as to actual innocence. Moreover, such evidence was available at the time of trial.

Finally, a jury would not have been permitted to hear any polygraph evidence.

Thus, even were a claim of actual innocence cognizable under federal habeas corpus, this accumulation of evidence that tracks and corroborates the evidence presented at trial and that largely

11

actual innocence claim lies, if anywhere, in Texas state procedures.

B

On the other hand, in <u>Schlup v. Delo</u>, 115 S.Ct. 851 (1995), the Supreme Court recognized the distinction between habeas petitioners who assert that their actual innocence in itself presents a violation of their constitutional rights--as in <u>Herrera</u>--and habeas petitioners who assert that their actual innocence acts as a catalyst to bring them within that "narrow class of cases" in which the refusal of the court to hear their underlying constitutional claims will result in "a fundamental miscarriage of justice." 115 S.Ct. at 860-61. Actual innocence in this second type of petition is not itself a basis for federal habeas relief; it is, however, "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." <u>Id.</u> at 861. We will address later in the opinion this "actual innocence" argument in the context of the constitutional deprivations that Lucas alleges occurred during trial in order to determine whether those claims are procedurally barred.

---

was available at the time of trial, does not qualify to meet the extraordinarily high threshold as newly discovered evidence demonstrating actual innocence that is necessary to suggest a federal constitutional right arising from this Texas conviction.

12

IV

Lucas next argues that it is inherently unconstitutional for a state to execute someone when the state has admitted that person's innocence,[4] and that this unconstitutionality exists separate from the value of the state's admission as newly discovered evidence of his innocence. There is no authority in Fifth Circuit case law for such a claim and it is thus barred as an improper request for recognition of a new constitutional rule on collateral review. Teague v. Lane, 109 S.Ct. 1061, 1070-75 (1989) ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.").[5]

V

A

---

[4]Johnson disputes whether the Lucas Report contains any admission that Lucas is innocent of the "Orange Socks" murder. Testimony before the district court indicated that the Attorney General's Office reached no official conclusion with respect to Lucas's guilt or innocence of the "Orange Socks" murder. Furthermore, the statements of former Attorney General Jim Mattox, relied upon by Lucas for support of this claim, were made after Mattox's last term as Attorney General expired in January 1991. As such, they may not be attributed to the State as an official admission.

[5]Teague set out two exceptions to its prohibition on retroactive application of new rules. Teague, 109 S.Ct. at 1075-78. Neither of the exceptions applies in this instance.

Lucas failed to raise the issues numbered 3 through 7 (noted earlier) above until his third state application for habeas corpus. The state court dismissed Lucas's third habeas petition as an abuse of the writ under state law and refused to review the merits. Dismissal of a Texas habeas petition on abuse grounds creates a procedural bar to consideration of the dismissed issue by federal courts. Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995). A petitioner may avoid this bar by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman v. Thompson, 111 S.Ct. 2546, 2565 (1991). Lucas has not made either showing. However, this bar may also be overcome by a showing that the "failure to consider the claims will result in a fundamental miscarriage of justice." Id. Such a fundamental miscarriage of justice may be demonstrated by a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 115 S.Ct. at 864 (citing Murray v. Carrier, 106 S.Ct. 2639, 2649 (1986)). To satisfy this standard, a petitioner must show that he is "actually innocent." Id. To demonstrate actual innocence, it is necessary that the petitioner "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard

14

to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Id.

Thus, consideration of these claims is barred unless Lucas has made the requisite showing of actual innocence. The state court conviction was based, primarily, upon Lucas's confessions of guilt. Lucas now contends, however, that evidence obtained after his conviction--largely contained in the compilation of information prepared by the Texas Attorney General's office (including the audit of work records that purportedly establish his presence in Florida on the date of the murder in Texas, the results of a polygraph examination, and the corroboration of his story regarding his observation of an automobile fire in Florida on the day of the murder)--supports his claim of actual innocence. This evidence is indeed probative of Lucas's claims of innocence. As we have indicated in footnote three, supra, however, we cannot say that Lucas has succeeded in demonstrating actual innocence. Nevertheless, we will assume for the purposes of this portion of the opinion that Lucas has made a sufficient showing of actual innocence to allow further inquiry into his constitutional claims.

B

Lucas contends that he was denied due process because the State did not present any evidence to corroborate his confession

15

that the murder occurred in the course of committing or attempting to commit aggravated sexual assault--an element necessary to his conviction for capital murder. In the alternative, he argues that he is entitled to relief because the State failed positively to identify the victim of the murder. These arguments, based upon Texas law, fail to raise issues of constitutional dimension. Texas' corpus delicti requirement is not constitutionally mandated. See West v. Johnson, 92 F.3d 1385, 1393-94 (5th Cir. 1996); Autry v. Estelle, 706 F.2d 1394, 1407 (5th Cir. 1983) (stating that "[s]uch a state rule of 'corpus delecti' has no independent constitutional footing").

Moreover, to the extent that Lucas attempts to challenge his conviction based upon the sufficiency of the evidence establishing capital murder, our review is limited to determining whether based "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2791-92 (1979). In the light of all the evidence presented at trial, including Lucas's confession, we find that a rational juror could have found that Lucas committed the murder during the course of committing or attempting to commit aggravated sexual assault. We further conclude that no due process deprivation resulted from the failure of the State positively to identify the victim of the murder. The

16

district court did not err by denying Lucas's request for habeas relief on these points.

C

Lucas contends that he was denied effective assistance of counsel. He points out that on appeal his attorney raised neither the failure of the State to produce independent evidence corroborating that the murder occurred during the course of a sexual assault nor the failure of the State to identify the murder victim. To warrant habeas relief, Lucas must make a substantial showing that his attorney's conduct was deficient and that he suffered prejudice as the result of the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Lucas has failed to make such a showing.

With respect to the claim of his counsel's failing to object to the State's failure to identify the victim, we must first note that the prejudice prong of the Strickland test is measured at the time the ineffective assistance claim is raised. Lockhart v. Fretwell, 113 S.Ct. 838, 843-44 (1993); Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996). Current Texas law (nor the law at the time of the trial for that matter) does not require the State to prove the identity of the victim. See Fisher v. State, 851 S.W.2d 298, 303 (Tex. Cr. App. 1993). Therefore, Lucas has not been

17

prejudiced by the failure of his counsel to object on direct appeal.

Lucas's second claim of ineffective assistance focuses on counsel's failure to object to the State's lack of corroborating evidence of an underlying sexual assault. The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial. Lockhart, 113 S.Ct. at 844 (citing Strickland, 104 S.Ct. at 2066). Until the decision of Gribble v. State, 808 S.W.2d 65, 71 (Tex. Cr. App. 1990), it was not clear under Texas law whether corroborating evidence of the underlying offense was necessary to support a conviction based upon extrajudicial confessions. Lucas's counsel on direct appeal did not have the benefit of Gribble and, thus, Lucas has failed to demonstrate deficient performance because counsel is not required to anticipate subsequent developments in the law. See Gray v. Lucas, 677 F.2d 1086, 1096 n.9 (5th Cir. 1982). We therefore decline to hold that the district court erred by refusing to grant the requested relief on these grounds.

D

Lucas next asserts that he is entitled to habeas relief because of the improper comments made by the prosecution during closing argument, which he alleges denied his rights under the

18

Fifth Amendment. The subject remark[6] was neither a direct nor an indirect comment on Lucas's failure to testify. See United States v. Borchardt, 809 F.2d 1115, 1119 (5th Cir. 1987). The overall point of the prosecutor's statements appears to be an argument that Lucas's guilt did not hinge on whether Lucas or the victim owned the matches. Furthermore, even if the remark were construed as a comment on his failure to testify, there is no indication that it was an error having a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993). The district court did not err when it denied habeas relief on this basis.

E

Lucas also advances the argument that he was denied a fair trial by the improper admission of prior convictions to impeach his chief alibi witness. The Texas Court of Criminal Appeals held that the trial court erroneously allowed the prosecution to impeach Mark Caulder--one of Lucas's construction job supervisors at the time of the murder--with stale convictions. Lucas v. State, 791 S.W.2d 35, 52 (Tex. Cr. App. 1989). The state court nevertheless concluded that "beyond a reasonable doubt . . . the error did not

_____

[6]The prosecutor stated, "The handwriting comparison on the matches with Henry Lee Lucas was inconclusive. We don't know that those are his matches; they might have been the girl's matches. She might have written in the matchbook; we don't know that. Only one person does know that, and that's Henry Lee Lucas."

contribute to either appellant's conviction or his sentence." Id.

When a habeas petitioner claims the erroneous admission of evidence, our role "is limited to determining whether [the] error [was] so extreme that it constituted denial of fundamental fairness" under the due process clause. Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986). Habeas relief is warranted only when the erroneous admission played a "crucial, critical [and] highly significant" role in the trial. Id. The legitimacy of the particular convictions is a relevant factor in determining whether the improper impeachment "'constituted denial of fundamental fairness.'" Smith v. Collins, 964 F.2d 483, 486 (5th Cir. 1992) (quoting Evans v. Thigpen, 809 F.2d 239, 242 (5th Cir. 1987)).

Here, Lucas was not denied due process as a result of the admission of the convictions to impeach Caulder. The State's impeachment of Caulder was not the only evidence that it offered to counter Lucas's alibi defense that he was working in Florida at the time the Texas murder occurred. For example, Kenneth Emery, Lucas's coworker, testified that forgery of records by foremen in exchange for kickbacks was a common practice and that workers would often announce absent coworkers as present. Lucas himself related to investigators how the kickback system worked. In sum, the improper impeachment of Caulder simply was not of such a crucial nature to Lucas's defense as to warrant habeas relief.

20

Furthermore, the case upon which Lucas principally relies, <u>Loper v. Beto</u>, 92 S.Ct. 1014 (1972), is easily distinguishable in that the convictions offered in that case were constitutionally invalid. There is no indication--and Lucas does not allege--that Caulder's convictions suffered from any constitutional infirmity.

Thus, this alleged error is no basis for habeas relief.

Lucas next argues that his trial was fundamentally unfair because of the admission of his videotaped statement of February 16, 1984, in which he discussed the practice of paying supervisors to falsify work records for him. Lucas's contention is that the statement was taken in violation of his right to counsel and his right to due process.

In November 1983, the trial judge signed an order that prohibited questioning of Lucas about any matter unless he consented, and then only after his attorneys had been notified. The order further prohibited interrogation concerning "the offense for which he ha[d] been indicted" under all circumstances. Lucas was questioned--after the entry of this order and without an attorney present--about the validity of his work records. On direct appeal, the Texas Court of Criminal Appeals found that the statement was not in violation of the order because the interrogation did not relate to the offense for which Lucas had been indicted and because Lucas's attorneys had agreed with the State, after the order was signed, to waive the notice requirement unless the proposed interrogation related to the instant offense.

Factual findings by a state court after a hearing on the merits are presumed to be correct and can be overcome only by "convincing evidence." 28 U.S.C. § 2254(d) (West 1997 & Supp.

1990). Although certain exceptions exist to the application of this presumption, Lucas has failed to establish, and it does not otherwise appear, that any of the listed exceptions apply. Id. We therefore assume that the factual issues before the state court were resolved correctly. Questions of law are reviewed de novo and mixed questions of fact and law generally remain subject to independent review. Wright v. West, 112 S.Ct. 2482, 2495-96 (1992) (O'Connor, J., concurring) (the Supreme Court consistently reviews mixed questions of law and fact in pre-AEDPA habeas corpus cases de novo); Perillo v. Johnson, 79 F.3d 441, 445 (5th Cir. 1996); Kirkpatrick v. Whitley, 992 F.2d 491, 494 (5th Cir. 1993). Although the presumption of correctness does not attach to a state court's determination of a mixed question, the presumption does apply to the historical facts underpinning the state court's ultimate legal conclusion. Sumner v. Mata, 102 S.Ct. 1303, 1306-07 (1982); Black v. Collins, 962 F.2d 394, 401 (5th Cir.), cert. denied, 112 S.Ct. 2983 (1992).

In determining this mixed question of law and fact, we must agree with the state court that the interrogation did not relate to the offense for which Lucas was indicted and that the state trial court's order was thus not violated. Even if the order were violated, that fact alone is insufficient to warrant habeas relief unless the violation also rises to a constitutional level. In this

case, the record clearly indicates Lucas's willingness to continue discussions with the authorities without benefit of counsel. Because Lucas waived his right to the presence of counsel during the relevant interviews under both the Fifth and Sixth Amendments, no constitutional violation occurred either in the taking of his February 16, 1984 statement or in its admission at his trial.

Contrary to Lucas's assertions, he is not entitled to habeas relief on this ground.

G

Lucas next contends that he is entitled to relief because the admission of his videotaped confession of August 1983, in which he is handcuffed, deprived him of the right to be presumed innocent. Lucas cannot point to an established constitutional principal that dictates this result. Instead, he argues that the reasoning of our cases concerning the rights of accused persons who are restrained during the trial proceedings should be extended to the circumstance of a brief video exposure. In short, Lucas argues for the creation and retroactive application of a new rule of constitutional law. Teague controls this issue and mandates that we reject the

24

argument.[7]  The district court properly declined to grant relief on this basis.

H

Lucas's next three alleged errors (noted earlier as 11, 12 and 13) all relate to statements that he contends were taken in violation of his rights under the Fifth and Sixth Amendments.

These statements were taken prior to the institution of adversarial proceedings in the respective cases; therefore, there was no violation of Lucas's Sixth Amendment rights.  The protection provided by the Sixth Amendment is "offense specific" and, thus, does not attach simply because the accused has invoked the right with respect to adversarial proceedings involving another offense. McNeil v. Wisconsin, 111 S.Ct. 2204, 2207 (1991).  At the time of

---

[7]The Supreme Court has stated that a holding sets out a new rule "'if the result was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final.'" <u>Penry v. Lynaugh</u>, 109 S.Ct. 2934, 2944 (1989) (quoting <u>Teague</u>, 109 S.Ct. at 1070) (emphasis in original).  Difficult questions are presented when the new holding is reached through an extension of reasoning contained in previous cases.  "But the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under <u>Teague</u>." <u>Butler v. McKellar</u>, 110 S.Ct. 1212, 1217 (1990).  If the outcome of the case is "susceptible to debate among reasonable minds," then the decision is not dictated by existing precedent and is a new rule barred by <u>Teague</u> unless one of the two exceptions embraces it. <u>Id.</u>  The holding requested by Lucas is susceptible to debate and thus constitutes a new rule under the reasoning of <u>Butler</u>.  The claim does not fall within either <u>Teague</u> exception and we are thus precluded from considering it.

25

the statements, Lucas had not been formally charged in either the present case (the subject of the June 22 and July 31 statements) or the Abilene case (the subject of the July 28 statement). Therefore, notwithstanding the Texas Court of Criminal Appeals' finding to the contrary, the interrogations leading to the statements do not implicate Sixth Amendment concerns.

On the other hand, the Fifth Amendment right to have counsel present during custodial interrogation, once invoked, applies to all interrogations. Arizona v. Roberson, 108 S.Ct. 2093 (1988). This right is invoked where a person indicates that he wishes to speak to an attorney or to have an attorney present during the questioning. Davis v. United States, 114 S.Ct. 2350, 2355 (1994) (noting that the request must be made "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."); Miranda v. Arizona, 86 S.Ct. 1602 (1966).

The Texas Court of Criminal Appeals engaged in a lengthy consideration of this issue and concluded that Lucas never invoked his right to counsel under the Fifth Amendment. Lucas, 791 S.W.2d at 45-50. The facts as found by the state court are supported by substantial evidence and we thus presume their correctness. Prior to the taking of the statements in question, Lucas never verbally requested the presence of an attorney nor did he otherwise indicate

26

that he wished to speak with an attorney or have one present during questioning.  See Edwards v. Arizona, 101 S.Ct. 1880 (1981).  Lucas consistently expressed his desire to cooperate with the authorities without the benefit of counsel.  "[T]he tapes of the conversations in question undeniably demonstrate appellant's ongoing desire to talk to the authorities, regardless of the personal cost to himself."  Lucas, 791 S.W.2d at 50.  Lucas's Fifth Amendment right to counsel was not infringed by the taking of these statements because he had not invoked this particular federal right.  Habeas relief should not issue on these grounds.

I

Lucas also contends that he is entitled to habeas relief because of the admission of evidence of his extraneous offenses through the State's introduction of portions of his July 31, 1983 confession.  The Texas Court of Criminal Appeals found that the evidence was properly admitted because Lucas "opened the door" by presenting other portions of the confession that gave the jury a false impression of the confession.  Lucas, 791 S.W.2d at 53-54. In view of these circumstances, we agree that the introduction was proper.  In the alternative, even if the trial judge committed error, our role "is limited to determining whether [the] error [was] so extreme that it constituted denial of fundamental fairness" under the due process clause.  Andrade v. McCotter, 805

27

F.2d 1190, 1193 (5th Cir. 1986). Habeas relief is warranted only when the erroneous admission of evidence played a "crucial, critical [and] highly significant" role in the trial. Id.

The portion of the confession to which Lucas objected contained only "implied references" to other offenses. Moreover, the trial judge instructed the jury not to consider any evidence regarding other crimes in determining Lucas's guilt. We conclude that, even if the evidence were erroneously admitted, Lucas has not made a substantial showing that he was denied the fundamental fairness required by the Constitution and he is not entitled to habeas relief on this ground.

J

Lucas contends that the State violated the mandate of Brady v. Maryland, 83 S.Ct. 1194 (1963), by failing to disclose exculpatory evidence in the form of information concerning another credible suspect in the murder.

The state court entered findings of fact, after an evidentiary hearing, that establish that there was never another credible suspect in this matter. Lucas presented no convincing evidence that casts doubt on the state court's factual findings; nor has he demonstrated, and it does not otherwise appear, that any of the listed exceptions to the presumption of the correctness of state court findings, found under 28 U.S.C. § 2254(d), apply. Thus, we

28

presume the correctness of the state court findings and conclude that no Brady violation occurred. See 28 U.S.C. § 2254(d). The application for relief on this basis was properly denied.

K

Lucas next maintains that he is entitled to habeas relief because the trial court failed to provide special instructions at the punishment phase of the trial that would allow the jury specifically to consider his mitigating evidence of mental illness and childhood abuse. Lucas relies on Penry v. Lynaugh, 109 S.Ct. 2934 (1989), for this claim. In Penry, the Supreme Court held that the petitioner was constitutionally entitled to further jury instructions because, although his mitigating evidence had been placed before the sentencer, the sentencer "had no reliable means of giving mitigating effect to that evidence." Graham v. Collins, 113 S.Ct. 892, 902 (1993) (citing Penry). Penry's application has since been limited to that narrow class of situations in which the petitioner's mitigating evidence was placed beyond the jury's effective reach. Id. The question we must decide, therefore, is whether the mitigating evidence presented was within the effective reach of the jury under either of the interrogatories considered by the jury.

In accordance with Texas law, the trial court put to the jury the following two statutory punishment-phase interrogatories:

(1) Do you find from the evidence, beyond a reasonable doubt, that the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased would result?

(2) Do you find from the evidence, beyond a reasonable doubt, that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

The mitigating evidence at issue here relates to Lucas's mental illness and his abusive childhood. With respect to his mental illness, experts testified at trial that Lucas was psychotic and suffered from schizophrenia. One expert further explained that if Lucas had committed the Orange Socks murder, then at the time of the act "[h]e would have been psychotic, meaning out of touch with reality, out of control over his impulses, over his drives. . . . insane." It is clear to us that the sentencer could have effectively considered the mitigating aspect of such evidence under the first interrogatory, that is, whether Lucas acted deliberately when he committed the murder.[8]

_____

[8]Expert testimony indicated that Lucas's traumatic childhood could be credited as a likely cause of his mental instability. Consideration of this evidence was within the effective reach of the sentencer under the first interrogatory in that the sentencer could have appraised the relationship between his abusive childhood and his mental illness and, if that relationship were sufficiently substantial, given mitigating effect to the deliberateness of Lucas's actions in the context of considering the mitigating effect of his mental illness.

Further, the testimony at trial indicated that, although Lucas had mental problems, he responded well to antipsychotic drugs like Thorazine and that his particular illness could be treated in a controlled environment. This prospect of medical treatment placed the evidence of his mental illness and abusive childhood within 'the effective reach of the sentencer' as a potential mitigating factor with respect to the second issue, that is, the jury could have considered whether, in an institutional setting, the probability that Lucas posed as a future danger to society was not so great as to merit imposition of the death sentence. See Johnson v. Texas, 113 S.Ct. 2658, 2669 (1993) ("[T]here is no reasonable likelihood that the jury would have found itself foreclosed from considering the relevant aspects of petitioner's [mitigating evidence]."); Graham, 113 S.Ct. at 902 ("[I]t is apparent that Graham's evidence--unlike Penry's--had mitigating relevance to the second special issue concerning his likely future dangerousness."); Motley v. Collins, 18 F.3d 1223, 1230-35 (5th Cir. 1994).

Furthermore, to the extent that Lucas seeks relief beyond the narrow purview provided in Penry, he has failed to show that reasonable jurists would feel compelled by precedent existing at the time his conviction became final in 1990 to rule in his favor. He is thus requesting retroactive application of a new rule and consequently we are barred from considering the merits of this

claim pursuant to the non-retroactivity principles under <u>Teaque</u>. Lucas is not entitled to relief on this ground.

L

Lucas's final contention is that his original arrest was in violation of the Fourth Amendment because it was not supported by probable cause and, therefore, the subsequent confessions are tainted. This argument fails to state a basis for federal habeas relief. <u>See</u> <u>Stone v. Powell</u>, 96 S.Ct. 3037, 3052-53 (1976).

VI

In conclusion, we grant Lucas's motion to reconsider application of the Antiterrorism and Effective Death Penalty Act. In accord with the Supreme Court's opinion in <u>Lindh</u>, we hold that the AEDPA does not govern this appeal. Under pre-AEDPA law, we find that Lucas has made a "substantial showing of the denial of a federal right." We therefore grant the application for a CPC in all respects. After reaching the merits, however, we hold that Lucas is not entitled to federal habeas relief. We therefore affirm the district court's denial of Lucas's petition.

> MOTION TO RECONSIDER GRANTED;
> REQUEST FOR CPC GRANTED; and
> JUDGMENT OF DISTRICT COURT AFFIRMED.