UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-40340
Civil Docket #5:99-CV-00209

_____

WALTER BELL, JR.,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director,
Texas Department of Criminal Justice - Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

December 13, 2001

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

By EDITH H. JONES:[*]

Petitioner Walter Bell was denied habeas corpus relief by the federal district court on his conviction for the capital murder of Ferd Chisum, his former employer, in Port Arthur, Texas, in 1974. Bell presents two contentions in this court. First, he argues that evidence of mild mental retardation presented at his

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trial disqualifies him from the death penalty by virtue of an alleged evolving national consensus against executing the mentally retarded. The district court granted a certificate of appealability (COA) on this contention. Bell applies for a COA, however, after being turned down on his second contention, that newly discovered evidence demonstrates his confession was coerced by police brutality. Finding no merit in either contention under the standards of review adopted by AEDPA [1], we affirm the judgment on the first contention and deny COA on the second.[2]

1. **Whether the Constitution prohibits execution of the mentally retarded.**

Under AEDPA, we review the state court decision denying relief on this claim to determine (1) whether it was contrary to or involved an unreasonable application of clearly established Federal law as expressed by the Supreme Court, 28 U.S.C. § 2254(d)(1), or (2) whether the facts found by the state courts were unreasonable in light of the record. 28 U.S.C. § 2254(d)(2). Relief is not barred on this claim by the Teague non-retroactivity doctrine. See

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996.

[2] Both the district court and the magistrate judge analyzed Bell's claims *de novo*, without reference to the substantive limitations imposed by AEDPA. While we need not question our brethren's analysis, it is important to recognize that AEDPA's standards reflect the deference that Congress has ruled we must pay to state court convictions.

2

Penry v. Lynaugh, 492 U.S. 302, 331, 109 S.Ct. 2934, 2953 (1989).

Bell's initial conviction was reversed, and he received a second trial for capital murder of Ferd Chisum so that the state courts could apply the then-new Supreme Court decision in Penry v. Lynaugh. Penry held that a jury must be permitted to find that a defendant's mental retardation mitigates against infliction of the death penalty because his condition limits his culpability. 492 U.S. at 320-28, 109 S.Ct. at 2947-52. Penry refused to hold that the Eighth Amendment requires a categorical exclusion of mentally retarded defendants from receiving the death penalty. 492 U.S. at 331-35, 109 S.Ct. at 2953-55. The Texas Court of Criminal Appeals so applied Penry to Bell's second appeal. Bell v. State, 938 S.W.2d 35, 55 (1996).

Penry has not been subsequently overturned by the U.S. Supreme Court. Until it is, the standard for granting habeas relief under AEDPA, which requires state court decisions to conform to Federal law articulated by the Supreme Court, will not be satisfied. Bell's argument, formulated on a still evolving national consensus made up of over a dozen states that have legislatively decided to place limits on executions of the mentally retarded, is thus irrelevant in the lower federal courts.

In addition, Bell's case exemplifies the wisdom behind Penry's decision to allow juries to examine the impact of mental

3

retardation on culpability on a case-by-case basis.  While Bell has scored at a level of mild mental retardation throughout his life, an expert also testified that he was competent to stand trial and knew the difference between right and wrong.  He carefully planned the murders of Ferd and Eileen Chisum, assembling papers, a knife, handcuffs, and extension cords from which he had removed the ends, and he tricked the Chisums into letting him into their house on the pretext that he wanted their advice about attending school.  He forced Eileen Chisum to write a false name on several checks before he killed her, and he then tried to cash one of those checks the day after the murder.  The murders were executed ruthlessly and brutally.  There was, in short, plenty of evidence to support the jury's post-Penry weighing of Bell's mental retardation against his moral culpability.

As a footnote, we, like the state courts, reject the argument that the federal Americans with Disabilities Act somehow entitles Bell to exoneration from the death penalty.  The ADA neither addresses the imposition of criminal penalties, nor does it suggest that mentally disabled Americans should be treated differently from other Americans who commit crimes.

The state courts did not render an unreasonable decision in rejecting Bell's contentions concerning his mental retardation.

4

**2. Whether Bell made a substantial showing that he was denied any constitutional right regarding newly discovered evidence.**

Under AEDPA, a COA will issue only if Bell makes "a substantial showing" that he was denied a federal constitutional right. 28 U.S.C. § 2253(c)(2). A substantial showing means that reasonable jurists would find the state courts' assessment of Bell's claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 1600 (2000). The federal court's assessment of Bell's claim depends, in turn, on the "reasonableness" of the state court's decision. 28 U.S.C. § 2254(d) and (e).

To obtain relief from a judgment based on newly discovered evidence, a petitioner generally must demonstrate that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the defendant's failure to detect the evidence was not due to a lack of due diligence; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence would probably produce an acquittal at a new trial. Lucas v. Johnson, 132 F.3d 1069, 1076 n.3 (5th Cir.), cert dism'd., 524 U.S. 965 (1998).

Bell contends that affidavits procured in 1997 from his mother, his cousin, and most prominently, his former co-defendant Sheppard Watson, would have demonstrated that Bell was beaten by law enforcement officers to induce him to confess. He goes on to

5

argue that based on this evidence, his confession would have been excluded, and he would not have been convicted of capital murder. In his appellate brief, Bell focuses on Watson's affidavit, which described Watson's alleged beating by the police and Watson's suspicion that Bell was beaten and, somehow, is supposed to fortify Bell's claim that he was physically forced to confess.

The state habeas court rejected this claim, finding both that Bell did not prove that the "new evidence" was unknown to him at the time of trial and that his attorneys at the second trial conceded the admissibility of Bell's confession, which had been admitted at the first trial despite a claim of police brutality. Bell disagrees only with the former finding, but he does not make a substantial showing, by clear and convincing evidence, to rebut it.[3]  See 28 U.S.C. § 2254(e)(1).  The state court findings are thus presumed correct.

Bell hopes to circumvent the adverse findings by alleging that his attorneys were constitutionally ineffective for not "discovering" the "new evidence" and for not moving to suppress his confession at the second trial.  See generally Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  The state courts responded that Bell had to know about evidence

---

[3]  Bell's mother's evidence could not be "new," as she testified similarly in both of his trials.  And Bell knew that his cousin had seen him in jail.

bolstering his coerced confession claim. His attorneys were not defective if he failed to communicate with them. The state courts alternatively found that the attorneys' performance could not have prejudiced Bell, because even if the cousin's and Watson's testimony had been offered at trial, it would have been cumulative and, from such biased sources, not very credible. We agree. There was substantial incriminating evidence even apart from Bell's confession. Bell was not prejudiced by his attorneys' conduct. The state courts' analysis of <u>Strickland</u> reasonably applies the relevant constitutional law in light of the state court record.

Bell has failed to make a substantial showing that his constitutional rights were violated by his attorneys' errors or by the absence at his second trial of newly discovered evidence.

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying habeas corpus relief on Bell's first contention is **AFFIRMED**. We **DENY** a certificate of appealability on Bell's second contention.