EDITH H. JONES, Chief Judge:
This death penalty case is reconsidered pursuant to the Supreme Court’s instruction following its summary grant of certio-rari and the vacating of our prior opinion based on Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). The panel affirms, but we are divided on our reasoning.[1]
In his appeal to this court, Nelson sought a COA on three issues: (1) whether the Texas penalty phase instructions used at trial provided the jury with an adequate vehicle to consider his mitigating evidence, as required by the Eighth and Fourteenth Amendments as construed in Penry v. Ly-naugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); (2) ineffectiveness of counsel for failing to request an instruction on the definition of reasonable doubt at the penalty phase; and (3) improper testimony by a state psychiatrist in light of Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). We granted a COA on the first two issues but denied COA on *284 the third issue and ultimately affirmed the district court’s denial of habeas relief.
Nelson then appealed to the Supreme Court. Following that Court’s decision in Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), and remand to this court, we requested further briefing based on Tennard.
After again reviewing the complete record, we reaffirm the grant of COA and affirm the district court’s denial of habeas relief as to Nelson’s Penry claim.[2]
BACKGROUND
Nelson was indicted for the capital murder of Charla M. Wheat and the attempted capital murder of Wheat’s roommate Carol Maynard that occurred on or about February 23, 1991. In December 1991, Nelson was tried for the capital murder of Wheat. During the guilVinnocence phase of trial Maynard testified as to the events of February 23. Specifically, Maynard testified that she and Wheat were forced, at knife-point, by Nelson to perform sexual acts on each other and on Nelson. Maynard further testified that Nelson stabbed Wheat. Nelson also stabbed Maynard, who was five months pregnant at the time, but she pretended to be dead and thus survived. Other testimony established that the stab wounds were the cause of Wheat’s death. Also, at trial, two voluntary confessions by Nelson admitted that he committed the crime because he “was drunk and wanted a piece of butt.”
On December 11, 1991, the jury found Nelson guilty of capital murder. On December 13, following the punishment phase of trial, the jury answered affirmatively the two special issues submitted pursuant to Texas Code of Criminal Procedure article 37.071(b).[3] Nelson was sentenced to death. Nelson’s sentence and conviction were affirmed on direct appeal by the Texas Court of Criminal Appeals on May 26, 1993. The United States Supreme Court denied Nelson’s petition for writ of certiorari on March 21, 1994.
On April 17, 1997, Nelson commenced a series of state applications for writ of ha-beas corpus. The state district court issued findings of fact and conclusions of law recommending denial of relief on all of Nelson’s claims on July 10, 2001. The Texas Court of Criminal Appeals denied Nelson’s application on the findings and recommendations of the trial court. Additionally, it dismissed Nelson’s subsequent application as an abuse of the writ under Texas Code of CRIMINAL Procedure ARTICLE 11.071, § 5(a).
DISCUSSION
As we did in Nelson’s prior appeal, we grant a COA on the question whether the special issue instructions given to the jury at sentencing failed to provide an adequate vehicle to give effect to his mitigating evidence in violation of Penry v. Lynaugh (Penry I), 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and in light of Ten *285 nard and Smith. The instructions given by the trial court were, in pertinent part, the standard Texas capital case instructions, i.e., those given in Penry I.
We grant a COA, but we conclude that, although the district court partially relied on this court’s now-defunct “constitutional relevance” analysis of mitigating evidence, the district court properly denied relief on Nelson’s Penry claim. See, e.g., McGruder v. Will, 204 F.3d 220, 222 (5th Cir.2000) (“We need not accept the district court’s rationale and may affirm on any grounds supported by the record.”). We cannot grant relief on a constitutional claim raised in a petition for habeas corpus unless the state court adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Although we review the federal district court’s treatment of Nelson’s habeas petition, the real focus of inquiry is the decision of the Texas courts, none of which used this court’s now-overruled test.
This court recently noted that, “The Supreme Court’s rulings in Penry II and Smith should not be read to disturb its earlier holdings affirming the constitutionality of Texas’s statutory death penalty sentencing scheme.” Bigby v. Dretke, 402 F.3d 551, 570 (5th Cir.2005) (internal citations omitted). Accordingly, for a Penry I claim to succeed, a court must first determine whether the defendant’s proffered mitigating evidence reasonably might serve as a basis for a sentence less than death. Tennard, 124 S.Ct. at 2571. In this inquiry, mitigating evidence is “relevant” so long as it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Id. (quoting McKoy v. North Carolina, 494 U.S. 433, 440, 110 S.Ct. 1227, 1232, 108 L.Ed.2d 369 (1990) and New Jersey v. T.L.O., 469 U.S. 325, 345, 105 S.Ct. 733, 744, 83 L.Ed.2d 720 (1985)). Second, we must determine whether the proffered, relevant evidence was beyond the “effective reach” of the jurors. Madden v. Collins, 18 F.3d 304, 308 (5th Cir.1994). Evidence is beyond the “effective reach” of the jury “only if there exists a reasonable likelihood that the jury would have [found] itself foreclosed from considering” the mitigating evidence. Johnson v. Texas, 509 U.S. 350, 368, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993).
In the sentencing phase, Nelson introduced evidence that (1) his mother rejected him; (2) he was intoxicated by drugs and alcohol when he committed the crime; (3) he had troubled relationships with his. brother and women; and (4) he suffered from a treatable borderline personality disorder.[4]
In light of Tennard,[5] all of this evidence could be construed as mitigating, but only *286 Nelson’s evidence of borderline personality disorder arguably supports the second prong of his Penry I claim.
Nelson’s evidence relating to his troubled interpersonal relationships and indifferent treatment by his mother is within the reach of the Texas punishment issues. The state court reasonably distinguished Nelson’s claim from Penry’s evidence of severe physical abuse by his mother. The state court’s decision is supported by longstanding precedent concerning similar — and more severe — claims of parental abuse and troubled interpersonal relationships. See Graham v. Collins, 506 U.S. 461, 476, 113 S.Ct. 892, 902, 122 L.Ed.2d 260 (1993) (concluding family background could be considered within the special issues); Cole v. Dretke, 418 F.3d 494 (5th Cir.2005) (holding troubled childhood, including alcoholic parents who deserted the defendant, alcoholic grandparents who did not want to care for the defendant upon taking custody of him, and an isolated childhood punctuated by frequent changes in caretakers could be considered within the special issues); Lucas v. Johnson, 132 F.3d 1069, 1082-83 & n. 8 (5th Cir.1998) (traumatic childhood was within the effective reach of the jury under the first special issue, deliberateness); Drew v. Collins, 964 F.2d 411, 420 (5th Cir.1992) (adverse effects of troubled childhood — including testimony that parents fought repeatedly, parents divorced and abandoned petitioner when he was very young, and petitioner was raised by his grandparents — could be considered under the special issues); Barnard v. Collins, 958 F.2d 634, 639 (5th Cir.1992) (troubled childhood, including evidence that petitioner’s father abandoned him from age four to age nine, was not Penry evidence absent proof these experiences had a psychological effect on the petitioner).[6] Specifically, when considering the first special issue, deliberateness, the jury could have given effect to Nelson’s claims that his mother abandoned him, his parents divorced at a young age, and he never had a relationship with his own child. All of these traumatic experiences might have countered the State’s argument that Nelson “deliberately” murdered this victim; the jury simply disagreed.
As to Nelson’s mitigation claim of voluntary intoxication, the state courts and federal district court correctly held that the special issues plainly allowed the jury to consider this evidence. See West v. Johnson, 92 F.3d 1385, 1405 (5th Cir.1996) (“As to the drinking and inference of intoxication, we have many times held that this may be adequately taken into account under both the first and second punishment issues (deliberateness and future dangerousness).”); Briddle v. Scott, 63 F.3d 364, 377 (5th Cir.1995)(“[E]vidence of intoxication may be considered as favorable to a negative answer to both the first and second punishment special issues, and hence is not Penry evidence.”);[7] see also Gra *287 ham v. Collins, 506 U.S. at 500, 113 S.Ct. at 915.
Turning finally to Nelson’s evidence relating to a borderline personality disorder, his expert characterized the disorder as one that causes Nelson’s moods to shift from normal to depressed and anxious. Dr. Hickman, Nelson’s expert, described Nelson’s personality disorder as a psychological condition that caused his moods to go up and down between being normal and being depressed, anxious, and unsure of the reasons for his mood swings. Nelson responded to this condition by consuming alcohol and/or drugs. Significantly, Dr. Hickman testified that Nelson’s disorder was treatable with medication and psychotherapy. This court’s decisions undermine Nelson’s claim that the jury was unable to give mitigating effect to this evidence. In Coble v. Dretke, 417 F.3d 508 (5th Cir.2005), the court reiterated that “mitigating evidence of mental illness could be considered within the context of the second special issue, future dangerousness, if the illness can be controlled or go into remission.” Id. at 524 (citing Lucas v. Johnson, 132 F.3d 1069, 1082-83 (5th Cir.1998) and Robison v. Johnson, 151 F.3d 256, 266 (5th Cir.1998)). Coble also distinguished a condition involving a treatable mental disorder from this court’s Bigby decision, 402 F.3d at 571, in which medication could not control the defendant’s schizophrenic behavior and thinking.[8] Nelson’s treatable disorder is thus distinct from one that mandates relief under Penry I.[9]
 Alternatively, we hold that Nelson’s scanty evidence of borderline personality disorder falls within a qualification to the Court’s reasoning in Tennard, which recognized that relevant mitigating evidence ultimately may be insufficient to warrant a sentence less than death if a reasonable jury could not so find based on all of the evidence in the case. Tennard, 124 S.Ct. at 2570;[10] accord Bigby, 402 F.3d at 567-69. Further, under Tennard, evidence of a trivial feature of the defendant’s character or the 'circumstances of the crime unlikely to have any tendency to mitigate the defendant’s culpability may be deemed irrelevant and inadmissible. Tennard, 124 S.Ct. at 2571. Nelson’s evidence of borderline personality disorder was not “of such a character that it ‘might serve as a basis for a sentence less than death.’ ” Id. (quoting Skipper v. South Carolina, 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986)). When juxtaposed with the significant aggravating evidence, the purported mitigating evidence of this condition and its effects could not reasonably provide a jury with sufficient reason to render a life sentence.
Based on the AEDPA standard and the nature of Nelson’s proffered evidence, we cannot say that the Court of Criminal Appeals unreasonably applied clearly established federal, law in rejecting Nelson’s Penry claim. Nelson points to no caselaw that the state courts failed to acknowledge, *288 nor to any Supreme Court decisions that the courts unreasonably applied. Any analytical problems in this case were made by this court (and the federal district court following this court’s precedent) in our previous, vacated decision. The Court of Criminal Appeals never relied on the now-defunct “constitutional relevance” test or its component parts, nor has our review of the complete record revealed any attempt by that court to place an elevated burden on Nelson for his claims. Equally important, all of Nelson’s proffered mitigating evidence could be considered and given effect by the jury at sentencing within the context of the Texas punishment issues. Therefore, we affirm, albeit for different and additional reasons, the district court’s denial of relief on this claim.
CONCLUSION
With respect to all claims except Nelson’s Penny claim, we reinstate our earlier decision (granting COA on the ineffective assistance claim and denying relief on the merits, and denying COA as to all other issues raised in Nelson’s habeas petition). After a careful examination of Supreme Court precedent and additional briefing on Nelson’s Penny I claim, we grant COA but find his argument lacking on the merits. The judgment of the district court is AFFIRMED.

. Judge Stewart concurs in the judgment. Judge Dennis specially concurs infra.

. We reinstate our denial of relief and of COA on the issues not relevant to Tennard.

. The special issues are:
(b) On conclusion of the presentation of the evidence, the court shall submit the following ... [special] issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society[.]
TexCode Crim. Proc Ann. art. 37.071(b)(1) and (2). This statute was amended in 1991. All references to the "special issues” in this opinion reflect the statute as it was written at the time of Nelson’s trial.

. Nelson contends that evidence of his organic brain damage could not be fully considered by the jury within the scope of the special issues. There is no such evidence. The only record evidence of organic brain damage is a single sentence of testimony from an expert witness for the defense, stating "there is minimal room to consider that there may be minimal brain damage.” The expert, however, explicitly said that he could not make a formal diagnosis that Nelson in fact had brain damage. He only suggested that if further medical examinations were performed, the existence of brain damage should not be ruled out prior to the exam. This evidence was not before the jury and can play no role in a Penry analysis.

. See id. at 2570 (citing, New Jersey v. T.L.O., 469 U.S. at 345, 105 S.Ct. 733 ("[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the *286 ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’ ”) (quoting Fed. Rule Evid. 401)).

. Lucas does not make any reference to, or rely upon, the tests rejected by the Supreme Court in Tennard. Barnard and Drew do rely on our now-defunct "uniquely severe perma-dient handicap” test as to other claims, but in no way used this test in adjudicating the claims of parental neglect. Therefore, the relevant aspects of Barnard and Drew are still controlling and support denial of Nelson’s Penry claim concerning parental neglect.

. None of these precedents makes any reference to, or rely upon, the tests rejected by the Supreme Court in Tennard.

. As in Coble, we need not speculate under what circumstances the first special issue, concerning a defendant’s deliberateness in perpetrating the capital crime, will be inadequate to afford full mitigating effect to evidence of mental illness. Cf. Lucas, 132 F.3d at 1082-83; Bigby, 402 F.3d at 565-66.

. We express no opinion on whether any allegation of mental disorder, no matter how nebulous, calls into question the sufficiency of the Texas special issues.

.The fact that an item of evidence is relevant, however, does not mean that it is sufficient to prove the fact of consequence to which it is directed. See Fed.R.Evid. 401 Advisory C. Notes (" 'A brick is not a wall ... It is not to be supposed that every witness can make a home run.' ”).