PATRICK E. HIGGINBOTHAM, Circuit Judge:
A jury in the 207th Judicial District Court for Comal County, Texas, on September 25, 1985, convicted Rodolfo Baiza Hernandez of the capital murder of Victor Cervan. The jury gave affirmative answers to the questions required in Texas at the sentencing phase of the trial, and he was sentenced to death. After direct and collateral review by the state courts of his conviction and sentence, Hernandez brings this appeal from a denial of federal habeas relief by the United States District Court. He urges two points.
First, he urges that he was denied his Sixth Amendment right to counsel because a court-appointed psychiatrist testified at the sentencing phase of this trial regarding his future dangerousness, although the State refused to allow his counsel to be present at the doctor’s examination of Hernandez. Second, he urges that the statutory questions asked the jury in the sentencing phase did not allow the jury to consider in mitigation his evidence that he was abused as a child and suffered chronic paranoid schizophrenia. We find these two contentions to be without merit and affirm dismissal of his federal petition.
I
Victor Cervan was one of five Mexican nationals attempting to make their way into this country by illegal passage across the Rio Grande northward to the area of Denton, Texas, in search of jobs on local ranches. There is little dispute about their encounter with Hernandez, who happened upon them as they left a boxcar in the rail yard in San Antonio. He offered to give them a ride north, for a fee. Instead, assisted by Jesse Garibay, his brother-in-law, Hernandez took them to a remote area where he robbed them and shot them at close range, execution style. All but Cervan survived, and two of them testified against Hernandez at trial.[1] The Texas Court of Criminal Appeals affirmed on direct review and the Supreme Court *346 denied certiorari.[2] In 1991 Hernandez filed a state petition for habeas relief, and in 1993 a special master filed proposed findings of fact and conclusions of law. The state trial court adopted the master’s proposals and recommended denial of all relief. The Texas Court of Criminal Appeals determined that the findings of fact were supported by the record and denied relief. The Supreme Court declined review a second time.[3] The federal petition followed. Two and one-half years later the district denied relief and granted a certificate of appealability on the two issues now before us.
II
Since Hernandez filed his federal petition for habeas relief after the effective date of the AEDPA, his petition is controlled by that act. Its most immediate provision[4] limits the authority of federal courts in habeas proceedings as follows:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
In Williams v. Taylor,[5] the Supreme Court explained 2254(d)(1) as follows:
Under the “contrary to” clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the “unreasonable application” clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court’s decisions but unreasonably applies that principle to the facts of the prisoner’s case.
Ill
Before trial Hernandez’s counsel filed a motion requesting Judge R.T. Pfeuffer, the state trial judge, to appoint a “qualified disinterested expert at County expense to conduct a mental examination of the Defendant with regard to the Defendant’s competency to stand trial, to file a written report in this Court within 30 days of the Order of Examination, and to testify regarding same at any trial or hearing upon such issue ... [and] that this Court furnish defense counsel with copies of said report as soon as it becomes available.” The motion also requested money to “enable the Defendant to select an expert of his own choice to examine the Defendant relative to his competency to stand trial” and “that Hernandez’s counsel be notified of the time and place of the examination and he be allowed to attend, alternatively, that the examination be video taped and he be furnished a copy of the tape.” Signifi *347 cantly, the motion also requested that the examiner file separate reports regarding the examiner’s opinion of whether Hernandez was mentally ill or retarded and whether he required treatment. The latter request plainly looks beyond questions of competency to stand trial to the sentencing phase of the trial. The motion also requested that the examiner testify at trial or at a hearing on the issues.
Judge Pfeuffer granted the motion in part, appointing Dr. John Sparks with instruction to examine for competency to stand trial and for sanity at the time of the offense. He denied the request for appointment of an “independent” doctor, the request that counsel be notified and be allowed to be present, as well as the alternative request for videotaping.
Dr. Sparks conducted the examination. He gave Hernandez the required warnings that his statements could be used against him at trial, except, apparently, a specific caution that any statements could be used in the sentencing phase of a trial. Dr. Sparks gave no notice to defense counsel, and counsel was not present during the examination. The following month, in September, the trial judge convened a competency hearing before a jury at which both sides offered evidence and Dr. Sparks testified regarding competency. The jury-found that Hernandez was competent to stand trial. Defense counsel made no further requests for psychiatric assistance and did not attempt an insanity defense at trial.
Dr. Sparks made no appearance until the punishment phase of the trial, when the State called him as a witness. The State’s direct examination made no mention of any examination by Dr. Sparks. Rather, the State proceeded by asking a narrative hypothetical question as a basis for Dr. Sparks’ opinion as to whether a person with a similar history would be a danger to society. Dr. Sparks expressed the opinion that such conduct reflected an anti-social personality and that a person with this history would likely continue to be a danger to society. The difficulties began when defense counsel seized the opportunity to develop on cross-examination a mitigation theory that rested on an old diagnosis of chronic schizophrenia made of Hernandez during an earlier prison stay for robbery. He presented prison records to Dr. Sparks reflecting the diagnosis, eliciting testimony about periods of remission and its responsiveness to drugs and therapy. Dr. Sparks acknowledged the differences in the illnesses but maintained that nonetheless his earlier answers in response to the hypothetical “appear[ ] to be closest to a description that is labeled the anti-social personalty.” He argued that such an afflicted person can experience periods of remission and with proper treatment live a productive life.
On redirect the State demonstrated that Dr. Sparks also had the benefit of the examination of Hernandez ordered by the court at Hernandez’s request; and that in concluding that Hernandez was competent to stand trial, Dr. Sparks had decided that Hernandez had an anti-social personality. The Texas Court of Criminal Appeals described this exchange at trial as follows:
[T]he State elicited redirect testimony from Dr. Sparks concerning appellant’s competency evaluation in response to appellant’s introduction of psychiatric evidence on cross-examination. By introducing appellant’s TDC psychiatric records and soliciting Dr. Sparks’ opinion concerning those records, appellant “opened the door” to the State’s use of the results of his competency exam for rebuttal purposes....
By creating the impression that appellant may have been suffering from paranoid schizophrenia, appellant paved the *348 way for the State to rebut that impression with psychiatric testimony tending to show that appellant was instead suffering from an anti-social personality disorder.[6]
The Texas court also concluded that Dr. Sparks did not express an opinion regarding future dangerousness, and that the trial court had specifically instructed the prosecutor that he could not do so. The Texas court explained:
When the State began to elicit testimony concerning Dr. Sparks’ competency examination, appellant immediately objected. At the subsequent hearing outside the jury’s presence, the trial court ruled that the witness could testify as to his medical findings, but not as to whether appellant would likely commit future acts of violence that would constitute a danger to society. The essence of Dr. Sparks’f ] testimony before the jury was his diagnosis of anti-social personality disorder, along with a comment that had he been informed of appellant’s prison psychiatric records, his diagnosis would have been a primary finding of paranoid schizophrenia in remission along with a secondary finding of an anti-social personality disorder. This testimony, while relevant to the issue of future dangerousness, was not a direct assertion of an expert opinion concerning future dangerousness.[7]
We agree with this reading of the record by the Texas court. At the least, it is both an objectively reasonable interpretation of the relevant events at trial and reasonable application of the decision of the Supreme Court in Buchanan v. Kentucky.[8]
The primary contention here is that the introduction of Dr. Sparks’ testimony that he had examined Hernandez before the competency hearing denied Hernandez’s right to counsel secured by the Sixth Amendment.[9]
Hernandez initiated the examination for competency and other evidence of mental illness through his counsel and had a full opportunity to cross-examine Dr. Sparks at the competency hearing before trial. There is no suggestion that Hernandez did not have a full opportunity to consult with counsel about the scope of the examination, both with regard to its use to demonstrate competency and to develop possible mitigating evidence. As Buchanan teaches, defense counsel was on notice that if he attempted to put mental status in play, the State might draw upon the examination in rebuttal.
At the sentencing phase of trial on direct examination by the State’s attorney, Dr. Sparks expressed an opinion based upon a hypothetical question and not upon his prior examination. The defense lodged no objection to the use of the hypothetical, *349 apart from an error in the recitation, which was promptly corrected. The only deviation from that presentation came on redirect examination where Dr. Sparks’ prior examination was disclosed in a shoring of Dr. Sparks’ opinions regarding the relative play of schizophrenia, in remission and when treated by drugs, as compared to the diagnosis of anti-social disorder. We find no violation of the Fifth or Sixth Amendment in this circumstance.
These events differ from those of White v. Estelle,[10] and Hernandez’s reliance upon it is misplaced. It is true that, as here, the examiner of White testified in the sentencing phase in response to hypothetical questions, but little else of importance is similar. Defense counsel in White objected to the testimony, urging the trial court that the tailoring of the hypothetical was calculated to inform the jury of the earlier examination ordered on a motion by the State, not the defendant.[11] The federal habeas trial court later found that the examination “reasonably indicated that the psychiatric prognosis of White’s future dangerousness was influenced by and derived from the court-ordered pretrial psychiatric examinations.”[12] This was not the case with the hypothetical put to. Dr. Sparks. Indeed, sensitive to Estelle, Judge Pfeuffer here instructed the prosecutor that he was to not ask Dr. Sparks “whether [Hernandez] would likely commit future acts of violence that would constitute a danger to society,”[13] for the reason that Judge Pfeuffer had not allowed defense counsel to be present when Dr. Sparks conducted the ordered examination of Hernandez. Disclosure of the court-ordered examination came here only in response to defense counsel’s cross-examination which opened the door for its receipt. As applied here, this trial court ruling was no mechanical application of the familiar “you opened the door.” Rather, it was a practical necessity to avoid the unfairness of tying the prosecutor’s hands while leaving defense counsel free to attack Dr. Sparks’ opinions as lacking an informed basis.
IV
Hernandez contends that the jury could not give effect to evidence that he was subjected to sustained child abuse and chronic mental disease. The argument is that the jury could not give effect to these mitigating circumstances under the questions asked them as explained in Penry v. Lynaugh.[14], As demonstrated by defense counsel in closing argument, the evidence of chronic schizophrenia could be considered by the jury in answering the question of future dangerousness, an argument counsel had carefully laid the support for in his cross-examination of Dr. Sparks. With medication and treatment, remission can be sustained.
We have repeatedly held that evidence of child abuse alone, unlinked to the offense, is not mitigating.[15]
*350 V
We have heard argument in this case and carefully considered the opinions of the courts that have previously decided these questions, including a detailed opinion by the district court below, and find no error. We affirm the dismissal of the writ of habeas corpus and dissolve the stay of execution.
AFFIRMED.

. See Hernandez v. State, 805 S.W.2d 409, 410-11 (Tex.Crim.App.1990).

. See id.; Hernandez v. Texas, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d726 (1991).

. Hernandez v. Texas, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995).

. 28 U.S.C. § 2254(d) (2000).

. 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

. Hernandez v. State, 805 S.W.2d 409, 412 (Tex.Crim.App.1990) (en banc).

. Id. at 412 n. 3.

. 483 U.S. 402, 424-25, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) (stating that the focus of the Sixth Amendment right is not on the use of the doctor's report and that "the proper concern of this amendment [is] the consultation with counsel, which petitioner undoubtedly had. Such consultation, to be effective, must be based on counsel's being informed about the scope and nature of the proceeding .... Given our decision in Smith, however, counsel was certainly on notice that if ... he intended to put on a 'mental status’ defense ... he would have to anticipate the use of psychological evidence by the prosecution in rebuttal.”)

.There are suggestions that these events also violated Hernandez’s right to not incriminate himself under the Fifth Amendment, although that separate contention has not been made to us. Regardless, neither contention, although resting upon distinct doctrines, can survive the analysis oí Buchanan.

. 720 F.2d 415 (5th Cir.1983).

. See id. at 417 & n. 1.

. Id. at 417.

. Hernandez, 805 S.W.2d at 412 n. 3.

. 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

. See Davis v. Scott, 51 F.3d 457, 461-62 (5th Cir.1995) (evidence of child abuse, alone, without demonstrating any link to the crime, does not constitute “constitutionally relevant mitigating evidence”); Madden v. Collins, 18 F.3d 304, 308 (5th Cir.1994) (evidence of troubled childhood not constitutionally relevant mitigating evidence when not linked in any way to the crime); Barnard v. Collins, 958 F.2d 634, 638-39 (5th Cir.1992) (rejecting Penry claim where crime not attributable to the proffered evidence of troubled childhood).